# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH POST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| WPX ENERGY, INC., KIMBERLY S. LUBEL, JOHN A. CARRIG, DAVID F. WORK, ROBERT K. HERDMAN, KELT KINDICK, KARL F. KURZ, JACK E. LENTZ, VALERIE M. WILLIAMS, RICHARD E. MUNCRIEF, and CLAY M. GASPAR, | ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     On December 15, 2019, WPX Energy, Inc.'s ("WPX" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a securities purchase agreement (the "Purchase Agreement") with Felix Investments Holdings II, LLC ("Felix Parent").

2.     Pursuant to the terms of the Purchase Agreement, WPX will purchase 100% of the issued and outstanding membership interests of Felix Energy Holdings II, LLC ("Felix") from Felix Parent for $2.5 billion, consisting of $900 million in cash and 152,963,671 shares of WPX common stock (the "Proposed Transaction").

3.      On February 5, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that the Company's stockholders vote to approve the Proposed Transaction at a special meeting of stockholders scheduled for March 5, 2020.

4.      As set forth below, the Proxy Statement omits material information, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of WPX common stock.

9.      Defendant WPX is a Delaware corporation and maintains its principal executive offices at 3500 One Williams Center, Tulsa, Oklahoma 74172.  WPX's common stock is traded

on the New York Stock Exchange under the ticker symbol "WPX."

10. Defendant Kimberly S. Lubel is a director of the Company.

11. Defendant John A. Carrig is a director of the Company.

12. Defendant David F. Work is a director of the Company.

13. Defendant Robert K. Herdman is a director of the Company.

14. Defendant Kelt Kindick is a director of the Company.

15. Defendant Karl F. Kurz is a director of the Company.

16. Defendant Jack E. Lentz is a director of the Company.

17. Defendant Valerie M. Williams is a director of the Company.

18. Defendant Richard E. Muncrief is Chief Executive Officer and Chairman of the Board of the Company.

19. Defendant Clay M. Gaspar is President, Chief Operating Officer, and a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of WPX (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of October 30, 2019, there were approximately 416,740,907 shares of common stock of WPX outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout

the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of WPX and the Purchase Agreement*

28.     WPX is an independent energy producer with core positions in the Permian and Williston basins.

29.     The Company built its Permian Basin position through acquisitions of RKI Exploration & Production and Panther Energy, as well as grassroots leasing and the formation of

a midstream joint venture with Howard Energy Partners.

30.     On December 15, 2019, the Individual Defendants caused WPX to enter into the Purchase Agreement.

31.     Pursuant to the terms of the Purchase Agreement, WPX will purchase 100% of the issued and outstanding membership interests of Felix from Felix Parent for $2.5 billion, consisting of $900 million in cash and 152,963,671 shares of WPX common stock.

32.     According to the press release announcing the Proposed Transaction:

WPX Energy (NYSEWPX) is taking another significant step in its commitment to delivering shareholder value with the $2.5 billion purchase of Felix Energy, one of the highest quality Delaware Basin operators.

Felix has approximately 1,500 gross undeveloped locations in the eastern portion of the basin, with expected production of approximately 60 MBoe/d (70% oil) at the time of anticipated closing.

WPX plans to implement a dividend post-closing, targeting approximately $0.10 per share on an annualized basis at initiation.

The acquisition and dividend program follow other steps WPX took in 2019 to enhance its value proposition, including reducing net debt, executing attractive midstream monetizations, launching a share buyback program and generating free cash flow.

The purchase price consists of $900 million cash, subject to closing adjustments, and $1.6 billion in WPX stock issued to the seller. WPX plans to fund the cash portion through issuance of $900 million of senior notes on an opportunistic basis. WPX also has obtained committed financing from Barclays in connection with the transaction and has full access to a $1.5 billion revolving credit facility.

The stock consideration comprises approximately 153 million WPX shares, which is based on the 10-day volume-weighted average price as of Dec. 13, 2019. The transaction is subject to customary closing conditions and approval by WPX shareholders.

The parties anticipate closing the transaction early in the second quarter of 2020. WPX's board unanimously approved the transaction. . . .

Pending the transaction's close, WPX expects to add two members to its board from EnCap Investments L.P. – the private equity company that founded Felix Energy.

EnCap has a history of creating value in the energy sector. . . .

Barclays and Tudor, Pickering, Holt & Co. acted as financial advisors to WPX on the transaction. Weil, Gotshal & Manges LLP served as legal advisor to WPX.

Jefferies LLC acted as financial advisor to Felix on the transaction. Vinson & Elkins LLP served as legal advisor to Felix.

***The Proxy Statement Omits Material Information***

33.     Defendants filed the Proxy Statement with the SEC, which recommends that the Company's stockholders vote to approve the Proposed Transaction at a special meeting of stockholders scheduled for March 5, 2020.

34.     As alleged below, the Proxy Statement omits material information.

35.     The Proxy Statement fails to disclose the timing and nature of the "discussions with potential transaction partners" other than Felix and the "energy company."

36.     The Proxy Statement fails to disclose the terms and value of the indication of interest submitted by the energy company.

37.     The Proxy Statement fails to disclose whether there were any communications between the Company and the energy company after December 14, 2019.

38.     The Proxy Statement fails to disclose whether the Company entered into confidentiality agreements with any parties other than Felix, and the terms of such agreements.

39.     With respect to Felix's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) EBITDAX and (b) Cash Flows From Operations; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

40.     With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) EBITDAX and (b) Cash Flows From Operations; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

41.     With respect to the pro forma financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) EBITDAX and (b) Cash Flows From Operations; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

42.     With respect to the Selected Transaction Analysis performed by the Company's co-financial advisor, Tudor, Pickering, Holt & Co. ("TPH"), the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by TPH in the analysis.

43.     With respect to TPH's Net Asset Value Analysis, the Proxy Statement fails to disclose: (i) the cash flows used by TPH in the analysis; (ii) the individual inputs and assumptions underlying the discount rates used by TPH in the analysis; (iii) the future estimated effects of general and administrative expenses and taxes; (iv) the value of the Company's Permian midstream assets; (v) the future estimated effects of hedging, non-drilling, and completion capital expenditures, general and administrative expenses, and taxes; and (vi) net debt.

44.     With respect to TPH's Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the unlevered free cash flows used by TPH in the analyses and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates used by TPH in the analyses; (iii) the terminal values; (iv) TPH's basis for applying EV/next twelve months EBITDAX multiples ranging from 3.00x to 4.50x and 3.50x to 5.00x; (v) the Company's net debt; and (vi) the number of fully-diluted shares for the Company.

45.     With respect to TPH's Has/Gets Company Pro Forma Net Asset Value Analysis, the Proxy Statement fails to disclose: (i) the cash flows used by TPH in the analysis; (ii) the individual inputs and assumptions underlying the discount rates used by TPH in the analysis; (iii) the pro forma value of the Company's Permian midstream assets; (iv) the future estimated effects of hedging, non-drilling, and completion capital expenditures, general and administrative

expenses, and taxes; and (v) pro forma net debt.

46.     With respect to TPH's Has/Gets Discounted Future Share Price Analysis, the Proxy Statement fails to disclose: (i) TPH's basis for applying multiples ranging from 3.5x to 5.0x; (ii) the Company's net debt; and (iii) the individual inputs and assumptions underlying the discount rate of 12.0%.

47.     With respect to TPH's Equity Research Analysts' Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by TPH in the analysis; and (ii) the sources thereof.

48.     The Proxy Statement fails to disclose the amount of compensation TPH has received or will receive for "previously provid[ing] . . . and [] currently providing financial advisory services to known controlled portfolio companies of EnCap Investments L.P. on matters unrelated to the proposed Acquisition."

49.     The Proxy Statement fails to disclose the terms of the engagement of the Company's co-financial advisor, Barclays Capital Inc. ("Barclays"), including: (i) the amount of compensation Barclays received or will receive in connection with its engagement and its participation in the financing for the Proposed Transaction; (ii) the amount of Barclays' compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether Barclays has provided past services to any parties to the Purchase Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Barclays for providing all such services.

50.     The Proxy Statement fails to disclose the timing and nature of WPX's officers' and directors' discussions with respect to Barclays participating in the financing for the Proposed Transaction.

51.     The Proxy Statement also fails to disclose the timing and nature of all communications regarding the future employment and directorship of the Company's officers and directors, including who participated in all such communications.

52.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

53.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to WPX's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and WPX**

54.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  WPX is liable as the issuer of these statements.

56.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within WPX, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

57.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

58.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Stock Issuance Proposal.  In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

59.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Stock Issuance Proposal.

60.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

61.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants**

62.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of WPX within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of WPX and participation in and/or awareness of WPX's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of WPX, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of WPX, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Stock Issuance Proposal.  They were thus directly involved in the making of the Proxy Statement.

66.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

67.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

B.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

C.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: February 17, 2020                    **RIGRODSKY & LONG, P.A.**

                                         By:   */s/ Gina M. Serra*
                                               Brian D. Long (#4347)
**OF COUNSEL:**                                Gina M. Serra (#5387)
                                               300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                               Wilmington, DE 19801
Richard A. Maniskas                            Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300                Facsimile: (302) 654-7530
Berwyn, PA 19312                               Email: bdl@rl-legal.com
Telephone: (484) 324-6800                      Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                         *Attorneys for Plaintiff*